UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

PETER CORBETT,

          Plaintiff,

v.                                    Civil Action No. 2:10-1053

RONALD DUERRING and
THE KANAWHA COUNTY BOARD OF EDUCATION,

          Defendants.


MEMORANDUM OPINION AND ORDER


          Pending is the motion to dismiss of defendants Ronald

Duerring ("Duerring") and Kanawha County Board of Education

("KCBOE") (collectively, "defendants"), filed October 27, 2010.


I.  Factual Background


          In this action, plaintiff Peter Corbett ("Corbett")

alleges that defendants terminated his employment in violation of

his First Amendment right of free speech.  The following factual

recitation is taken in its entirety from Corbett's complaint.


          Corbett was hired as a teacher and coach at George

Washington High School ("GW") in August 1989.  (Compl. ¶ 5).  He

was later promoted to vice principal in September 1998.  (Id.).

Duerring was hired as superintendent of KCBOE in April 1999. (<u>Id.</u> ¶ 6).

As GW's vice principal, Corbett's duties included the supervision and discipline of students.  (<u>Id.</u> ¶ 7).  In October 1999, Duerring summoned Corbett into his office to discuss certain disciplinary actions taken by Corbett in his capacity as vice principal.  (<u>Id.</u> ¶ 8).  During the discussion, Duerring urged Corbett to "make deals" with students who were children of persons of influence to prevent the parents from complaining to Duerring.  (<u>Id.</u> ¶ 9).  Corbett said he would not "make deals" or give special treatment to any students based on the influence of their parents.  (<u>Id.</u> ¶ 10).  Duerring advised Corbett that his failure to make such deals would negatively affect his career. (<u>Id.</u>).

Following this meeting, Corbett alleges, Duerring engaged in a pattern of retaliatory conduct as a result of Corbett's refusal to "make deals" with certain students.  (<u>Id.</u> ¶ 11).  Corbett recounts one particular incident which occurred on April 20, 2007, wherein he supervised a group of students grilling hot dogs in the GW parking lot.  (<u>Id.</u> ¶ 14).  After the cookout began, Corbett learned for the first time that GW's Principal had announced that "the outside of the building was

2

closed" that week due to security concerns.  (Id. ¶ 15).  Neither the principal nor any other GW employee informed Corbett that the outside of the building was closed prior to the cookout.  (Id. ¶ 16).  Corbett did not think it was a problem anyway because, at GW, the common understanding of the phrase "the outside of the building is closed" was that students were prohibited from being outside unless they were supervised by a faculty member.  (Id. ¶ 17).  Nevertheless, Corbett was reprimanded for supervising the student cookout during closed hours.  (Id. ¶ 18).  Corbett later attempted to change the GW student handbook to clarify the meaning of the phrase "the outside of the building is closed" and the procedure for notifying all affected persons, but he was prevented in doing so by school administrators.  (Id. ¶ 19).

On June 15, 2007, a pre-disciplinary hearing was held regarding Corbett's role in the April 20, 2007 cookout.  (Id. ¶ 20).  The hearing examiner recommended that Corbett receive a one day suspension without pay.  (Id. ¶ 21).  At Duerring's recommendation, KCBOE opted to suspend Corbett for five days without pay.  (Id.).

On November 27, 2007, while serving his five day suspension, Corbett began grilling and selling hot dogs near KCBOE's headquarters.  (Id. ¶ 24).  Corbett alleges that he held

3

this hot dog sale in protest of defendants' unequal treatment of students, arbitrary enforcement of rules at GW, and mistreatment of administrators who refused to comply with defendants' corrupt practices.  (<u>Id.</u>).  During this protest, Corbett also called attention to the ambiguity of the rules concerning security of students and staff at GW, as well as the lack of effective communication amongst GW administrators regarding the implementation of these rules.  (<u>Id.</u> ¶ 25).

On November 28, 2007, the day after Corbett's hot dog sale protest, Duerring notified Corbett that he was to be suspended indefinitely.  (<u>Id.</u> ¶ 27).  Duerring recommended to KCBOE that Corbett's employment be terminated.  (<u>Id.</u> ¶ 28).  After learning of Duerring's recommendation, Corbett retired from his position as vice principal at GW.  (<u>Id.</u> ¶ 29).  KCBOE later adopted Duerring's recommendation and voted to terminate Corbett's employment.  (<u>Id.</u> ¶ 30).  Corbett received formal notice of his termination in a letter from Duerring dated September 9, 2008.  (<u>Id.</u> ¶ 31).

## II.   Procedural Background

Before initiating this action, Corbett filed a broader action in the Circuit Court of Kanawha County on December 23, 2009, alleging three counts in his complaint: Count I - Wrongful Termination; Count II - Negligent Supervision; and Count III - 42 U.S.C. § 1983 (First Amendment retaliation).  Defendants removed to this court on January 29, 2010, and subsequently moved to dismiss on February 9, 2010.  On July 21, 2010, the court granted defendants' motion and dismissed the first two counts for failure to exhaust administrative remedies and the third count for failure to state a claim, all without prejudice.  Regarding Corbett's § 1983 First Amendment retaliation claim, the court observed that Corbett "merely alleges that the defendants retaliated against him by disciplining him for statements he made regarding matters of public concern.  He does not provide any indication as to the content, form, or context of his statements."[1]  Corbett v. Duerring, No. 2:10-102, slip op. at 25

---

[1]     Specifically, Corbett alleged as follows:

As a further part of Defendant Duerring's efforts to retaliate against Plaintiff, Defendant Duerring unfairly disciplined Plaintiff for a variety of actions undertaken by Plaintiff, including but not limited to actions and statements made by Plaintiff regarding matters of public concern and thus protected under the West Virginia and

(S.D. W. Va. July 21, 2010).  Accordingly, the court dismissed
the claim inasmuch Corbett presented "insufficient factual matter
to determine whether he has pled a claim for relief that is
plausible on its face."  Id. at 27.

        Corbett filed the current complaint with this court on
August 27, 2010.  The sole count of the complaint, titled Count I
- 42 U.S.C. § 1983, asserts that defendants unlawfully terminated
his employment in retaliation for his hot dog sale protest, which
Corbett claims was protected First Amendment expression.
Corbett "demands judgment against Defendants for all lost wages
and other special damages allowed by law; all emotional distress,
humiliation, and other general damages allowed by law; all
punitive damages allowed by law; attorneys fees and costs to the
extent permitted by law; and all such other and further relief as
the court deems just and proper."  (Id. 6).

        On October 27, 2010, defendants moved to dismiss
pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure.  Defendants contend that Corbett's complaint should be
dismissed for the following reasons: (1) Corbett's artful

_____

    United States Constitutions.

Corbett v. Duerring, No. 2:10-102, slip op. at 23 (S.D. W. Va.
July 21, 2010) (quoting Compl. ¶ 12).

                            6

pleading of a First Amendment claim, absent operative facts, is
insufficient to withstand dismissal pursuant to Rule 12(b)(6);
(2) Corbett's hot dog sale protest concerned a personnel matter
rather than a matter of public concern protected by the First
Amendment; (3) Corbett has not alleged that defendants were aware
of his allegedly protected First Amendment expression before they
terminated his employment; and (4) Corbett has not alleged
sufficient facts to establish causation.  (Def.'s Mot. Dismiss 1-
2).

### III.  Motion to Dismiss

### A.  Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a
pleader provide "a short and plain statement of the claim showing
. . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2);
Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6)
correspondingly permits a defendant to challenge a complaint when
it "fail[s] to state a claim upon which relief can be granted . .
. ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide
"'fair notice of what the . . . claim is and the grounds upon
which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct.

7

1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47
(1957), overruled on other grounds, Twombly, 127 S. Ct. at
1969)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188
(4th Cir. 2007).  Additionally, the showing of an "entitlement to
relief" amounts to "more than labels and conclusions . . . ."
Twombly, 127 S. Ct. at 1965.  It is now settled that "a formulaic
recitation of the elements of a cause of action will not do."
Id.; Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008).

     The complaint need not, however, "make a case" against
a defendant or even "forecast evidence sufficient to prove an
element" of the claim.  Chao v. Rivendell Woods, Inc., 415 F.3d
342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289
F.3d 270, 281 (4th Cir. 2002)).  Instead, the opening pleading
need only contain "[f]actual allegations . . . [sufficient] to
raise a right to relief above the speculative level."  Twombly,
127 S. Ct. at 1965; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949
(2009)(noting the opening pleading "does not require 'detailed
factual allegations,' but it demands more than an unadorned,
the-defendant-unlawfully-harmed-me accusation.").  Stated another
way, the complaint must allege "enough facts to state a claim to
relief that is plausible on its face."  Id. at 1974; Giarratano,
521 F.3d at 302.

The recent decision in <u>Iqbal</u> provides some guidance concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

<u>Iqbal</u>, 129 S. Ct. at 1949 (citations omitted).

As noted in <u>Iqbal</u>, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a district court to "'accept as true all of the factual allegations contained in the complaint . . . .'" <u>Erickson</u>, 127 S. Ct. at 2200 (quoting <u>Twombly</u>, 127 S. Ct. at 1965); <u>see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is additionally required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

**B.    Conversion of Motion to Dismiss to Motion for Summary Judgment**

Defendants have attached several exhibits to their motion to dismiss, and Corbett has likewise attached exhibits to his response.  Corbett states that "if the Court determines that the documents attached to the Defendants' motion have the effect of converting the motion to one for summary judgment, Plaintiff respectfully respects that the Court deny the motion or hold it in abeyance until such time as Plaintiff has had a reasonable opportunity to conduct discovery."  (Pl.'s Resp. 19).  Defendants, on the other hand, urge the court not to convert its motion to dismiss into a motion for summary judgment, asserting that "the exhibits attached to their motion to dismiss are facts that this Court could take judicial notice of."  (Def.'s Reply 9).

"Rule 12(b)(6) does not mandate that a district court treat a motion to dismiss as a motion for summary judgment simply because the moving party includes exhibits with its motion."  <u>Pueschel v. United States</u>, 369 F.3d 345, 354 n.3 (4th Cir. 2004).  It "only requires that a motion to dismiss be treated as a motion for summary judgment when the motion to dismiss or exhibits present matters outside the nonmoving party's pleadings and the

district court does not exclude such matters." <u>Id.</u>
Nevertheless, in reviewing a Rule 12(b)(6) motion, the court "may
properly take judicial notice of matters of public record"
without converting the motion to one for summary judgment.
<u>Philips v. Pitt Cnty. Mem. Hosp.</u>, 572 F.3d 176, 180 (4th Cir.
2009) (citations omitted).  The court may also consider documents
attached to the complaint, <u>see</u> Fed. R. Civ. P. 10(c), as well as
those attached to the motion to dismiss, "so long as they are
integral to the complaint and authentic." <u>Id.</u> (citing
<u>Blankenship v. Manchin</u>, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)).

        In view of defendants' request, the court will not
convert its motion to dismiss to a motion for summary judgment.
But in ruling on defendants' 12(b)(6) motion, the court --
consistent with the standards discussed above -- will only
consider those exhibits that constitute public records or
authentic documents that are integral to the complaint, while
excluding all other exhibits.

C.    First Amendment Retaliation Claim


        It is well-settled that a public employer "may not

retaliate against a public employee who exercises her First

Amendment right to speak out on a matter of public concern."

Love-Lane v. Martin, 355 F.3d 766, 776 (4th Cir. 2004) (citing

Pickering v. Bd. of Educ., 391 U.S. 563, 573 (1968)).  To prove

that a retaliatory employment action violated a public employee's

free speech rights, the employee must satisfy the following three

prong-test formulated by the court of appeals in McVey v. Stacy,

157 F.3d 271 (4th Cir. 1998):

> First, the public employee must have spoken as a citizen,
> not as an employee, on a matter of public concern.
> Second, the employee's interest in the expression at
> issue must have outweighed the employer's interest in
> providing effective and efficient services to the public.
> Third, there must have been a sufficient causal nexus
> between the protected speech and the retaliatory
> employment action.

Id. at 277-78; see also Smith v. Frye, 488 F.3d 263, 267 (4th

Cir. 2007) (applying "the McVey test"); Ridpath v. Bd. of

Governors of Marshall Univ., 447 F.3d 292, 316 (4th Cir. 2006)

(same).  The court considers each prong of the McVey test in

turn.

    1.   First <u>McVey</u> Prong – Matter of Public Concern

       The court must first assess whether the complaint has sufficiently alleged that Corbett engaged in speech as a private citizen on a matter of public concern.  "Whether speech is that of a private citizen addressing a matter of public concern is a question of law for the court," <u>Urofsky v. Gilmore</u>, 216 F.3d 401, 406-07 (4th Cir. 2000) (en banc), which must be determined by looking at "the content, form, and context of a given statement, as revealed by the whole record," <u>Connick v. Myers</u>, 461 U.S. 138, 147-48 (1983).  "An employee's speech involves a matter of public concern if it addresses 'an issue of social, political, or other interest to a community.'"  <u>Ridpath</u>, 447 F.3d at 316 (quoting <u>Urofsky</u>, 216 F.3d at 406-07).  For instance, speech that "'seek[s] to bring to light actual or potential wrongdoing or breach of public trust'" generally implicates matters of public concern.  <u>Jurgensen v. Fairfax Cnty., Va.</u>, 745 F.2d 868, 879 (4th Cir. 1984) (quoting <u>Connick</u>, 461 U.S. at 148)).  At the opposite end of the spectrum, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern."  <u>Stroman v. Colleton Cnty. Sch. Dist.</u>, 981 F.2d 152, 156 (4th Cir. 1992).  With regard to the "private citizen"

requirement, the Supreme Court has clarified that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 421 (2006).

Corbett's complaint alleges that, at the hot dog sale, he "protested" and otherwise "called attention" to (1) defendants' unequal treatment of students, (2) the arbitrary enforcement of rules at GW, (3) defendants' mistreatment of administrators who do not comply with their corrupt practices, and (4) the lack of clarity and effective communication of school policies affecting the safety of students and staff.  (Compl. ¶ 36).[2]  Corbett's previously dismissed complaint did not contain these factual allegations.

---

[2]     The complaint is unclear as to the precise form of Corbett's speech at the hot dog sale protest.  Corbett alleges that he "protested" and "called attention" to GW's alleged corrupt practices, but he does not clarify how he did this (i.e., whether he explicitly spoke about these practices or symbolically conveyed his message by selling hot dogs).  Viewing Corbett's allegations in the light most favorable to him, the court construes the complaint as alleging that Corbett communicated his ideas, verbally or otherwise, in some manner which reasonably could be understood by the general public.

Accepting these allegations as true and viewing them in the light most favorable to the plaintiff, as the court must at this stage, the complaint has sufficiently alleged that Corbett spoke at least in part as a private citizen about matters of public concern.  With respect to the context of Corbett's speech, the alleged fact that Corbett conducted his hot dog sale protest during his suspension supports an inference that he was not acting pursuant to his official duties as GW's vice principal, but was instead speaking as a private citizen.  Further, the content of Corbett's alleged statements regarding GW's preferential treatment of certain students based on their parents' social status appears to implicate a matter of public concern.  Such speech would seem to involve allegations of "wrongdoing or breach of public trust," Connick, 461 U.S. at 148, inasmuch as the public expects fair and impartial enforcement of rules by school administrators.  In addition, the Supreme Court and the Fourth Circuit have, in analogous circumstances, recognized that speech relating to discriminatory practices in public schools involves a matter of public concern.  See id. at 146 (noting that statements about a "[s]chool [d]istrict's allegedly racially discriminatory policies involve[ ] a matter of public concern."); Love-Lane v. Martin, 355 F.3d 766, 776 (4th Cir. 2004) (holding that "a complaint published in a school

newspaper that a public school discriminates on the basis of sex raises a question of public concern."). Similarly, Corbett's alleged statements regarding defendants' unequal treatment of students on the basis of their social status would likely be of great interest to members of the community, particularly parents of students at GW and other schools within KCBOE's purview who did not receive the preferential treatment allegedly accorded to children with more influential parents. Corbett's claimed speech, in other words, appears to have addressed an issue with which "the public or the community is likely to be truly concerned."[3] Goldstein v. Chestnut Ridge Volun. Fire. Co., 218 F.3d 337, 352 (4th Cir. 2000) (internal quotations and citations omitted).

In contending that Corbett's speech is not entitled to First Amendment protection, defendants initially dispute

---

[3] Although the parties have offered multiple newspaper articles as exhibits, the court cannot consider or take judicial notice of these articles on a Rule 12(b)(6) motion to dismiss. It is worth noting, though, that the very existence of this news coverage supports Corbett's contention that his speech touched on matters of public concern. See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed., 444 F.3d 158, 165 (2d Cir. 2006) ("To gauge the community's interest in [plaintiff's] speech we need only look to the abundant press coverage accorded [to it]"); Salge v. Edna Indep. Sch. Dist., 411 F.3d 178, 189 (5th Cir. 2005) ("'[t]he very fact of newspaper coverage [of the matter discussed by the employee]' indicates that 'the public was receptive and eager to hear about [the matter]'") (footnote omitted).

Corbett's motivation in conducting the hot dog sale protest.
Relying on various exhibits attached to their motion to dismiss,[4]
defendants maintain that the "documented facts" show that
Corbett's "choice to grill hotdogs outside of KCBOE's
headquarters was merely to show his discontent for his five (5)
day suspension, which was a private, personnel matter not
protected by the First Amendment."  (Def.'s Mem. Supp. Mot.
Dismiss 14-16).

        As earlier indicated, the court is not at liberty to
consider all of defendants' "documented facts" in ruling on a
12(b)(6) motion to dismiss.  It must instead focus its attention
exclusively on the well-pleaded allegations in the complaint
(subject to a few narrow exceptions not applicable here).  Even
assuming the court could consider defendants' exhibits at this
stage, Corbett's motivation for the hot dog sale protest is not
necessarily dispositive of his First Amendment claim, especially
in light of the court's conclusion that the content of Corbett's
alleged speech touched on matters of public concern.  <u>See</u> <u>Reuland</u>
<u>v. Hynes</u>, 460 F.3d 409, 417-18 (2d Cir. 2006) (collecting cases

---

        [4]    These exhibits include (1) Corbett's testimony at a
pre-disciplinary hearing before the KCBOE, (2) newspaper articles
discussing Corbett's protest, (3) a letter from Duerring dated
December 3, 2007 notifying Corbett of his suspension for
insubordination, and (4) a grievance filed by Corbett with the
West Virginia Public Employees' Grievance Board.

and observing that "circuits that have considered the role of motive on the question of public concern have almost uniformly agreed . . . that motive is not dispositive"); Jackson v. Bair, 851 F.2d 714, 720 (4th Cir. 1988) (holding that "content, subject-matter, is always the central aspect" of the public concern inquiry).  In any event, it would be inappropriate to probe Corbett's true motives at the Rule 12(b)(6) stage, where the court's only task is to assess the legal sufficiency of the complaint.

     Defendants also assert that Corbett's speech is not protected by the First Amendment because issues relating to the enforcement and dissemination of a high school's internal policies are not matters of public concern.  (Def.'s Mem. Supp. Mot. Dismiss 17).  While it may be true that part of Corbett's speech at the hot dog sale amounted to nothing more than personal grievances about the conditions of his employment, this is not fatal to his First Amendment claim.  See Campbell v. Galloway, 483 F.3d 258 (4th Cir. 2007) (holding that employee's letter "cannot be deemed to be a matter of private concern simply because the bulk of the letter addresses what can only be viewed as personal grievances" where at least some of plaintiff's statements touched on matters of public concern).  Inasmuch as the court has concluded that at least part of Corbett's alleged

18

speech addressed a matter of public concern -- for example, his statements regarding defendants' unequal treatment of students -- defendants' contention fails.

Further factual development of this case through discovery will likely shed light on the details surrounding Corbett's speech, which will in turn guide the inquiry of whether his speech merely related to a personal grievance or, instead, also addressed a matter of public concern based on its "content, form, and context . . . as revealed by the whole record." Connick, 461 U.S. at 147-48 (emphasis added).  But at this stage, Corbett has sufficiently alleged that he spoke as a private citizen on a matter of public concern.  The court accordingly moves to the next step of the First Amendment retaliation analysis.[5]

2.    Second McVey Prong – Balancing of Interests

Under the McVey test's second prong (also known as the Pickering balancing test) the court must assess whether the

---

[5]    Defendants also assert that Corbett's speech did not touch on matters of public concern because the complaint does not allege that defendants were "made aware" of the content of his speech.  (Def.'s Mem. Supp. Mot. Dismiss 13, 16-17).  Inasmuch as defendants' contention relates more to the causation element of Corbett's First Amendment retaliation claim than the public concern element, the court discusses the contention under the third McVey prong.

complaint has sufficiently alleged that Corbett's interest in First Amendment expression outweighed the defendant employer's interest in providing effective and efficient services to the public. Ridpath, 447 F.3d at 317 (citing McVey, 157 F.3d at 277). The court "must take into account the context of the employee's speech and the extent to which it disrupts the operation and mission of the institution." Id. (internal quotation marks omitted). "Factors relevant to this inquiry include whether a public employee's speech (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the institution; (6) undermined the mission of the institution; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the institution; and (9) abused the authority and public accountability that the employee's role entailed."[6]  Id.

---

[6]     The Fourth Circuit noted in Ridpath that "both this Court and the Supreme Court have also included the value of the employee's speech to the public in the Pickering balance."  447 F.3d at 317 n.28.  However, just as in Ridpath, the court in this case "need not assess the value of [the employee's] speech to the public, as it would be difficult to calculate based on the . . . Complaint, and [the court] can decide in [plaintiff's] favor without reaching it."  Id.

Here, the complaint alleges sufficient factual matter to support an inference that Corbett's interest in First Amendment expression outweighed defendants' interest in providing effective and efficient services to the public.  The complaint does not indicate, for example, that Corbett's hot dog sale protest disrupted the operation and mission of GW or KCBOE, impaired the maintenance of discipline by supervisors, or impaired harmony among coworkers, nor do defendants make any such contention.  The complaint does show, however, that Corbett conducted his protest during his suspension, off school grounds, and presumably away from his coworkers.  Thus, the complaint's factual allegations -- read in the light most favorable to the plaintiff -- give rise to the inference that Corbett's protected First Amendment speech had little to no impact on the workplace, thereby tipping the Pickering balance in his favor.  The court is therefore satisfied at the Rule 12(b)(6) stage that Corbett's complaint has sufficiently shown that his interest in speaking outweighed defendants' interest in promoting the efficient provision of public services.

### 3.  Third <u>McVey</u> Prong — Causal Relationship

The third and final prong of the <u>McVey</u> test requires the plaintiff to "demonstrate a causal relationship between his protected speech and the termination of his [employment]." <u>Ridpath</u>, 447 F.3d at 318 (citing <u>McVey</u>, 157 F.3d at 277–78). "[T]o establish this causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of her engaging in protected activity." <u>Constantine v. Rectors and Visitors of George Mason</u>, 411 F.3d 474, 501 (4th Cir. 2005) (citing <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998)). "'Knowledge alone, however, does not establish a causal connection' between the protected activity and the adverse action." <u>Id.</u> at 501 (quoting <u>Price v. Thompson</u>, 380 F.3d 209, 213 (4th Cir.2004)). "There must also be some degree of temporal proximity to suggest a causal connection." <u>Id.</u>  A lengthy time lapse between when the public official becomes aware of the protected activity and the alleged adverse action "negates any inference that a causal connection exists between the two." <u>Id.</u> (quoting <u>Dowe</u>, 145 F.3d at 657) (internal quotation marks omitted).

22

The "causal relationship inquiry" focuses on whether the public employee would have been terminated "but for her protected speech." Peters v. Jenney, 327 F.3d 307, 323 (4th Cir. 2003) (quoting Hall v. Marion Sch. Dist. No. 2, 31 F.3d 183, 193 (4th Cir. 1994)) (internal quotation marks omitted).  It "involves two steps . . . In the first step, the employee bears the burden of establishing the requisite causation to prove that the protected speech was a motivating factor or played a substantial role in inducing the adverse action." Id.  "If the employee is able to prove such, the second step shifts the burden to the employer to put forward evidence that it would have [taken adverse action] even in the absence of the protected speech." Id.

The complaint alleges that on November 28, 2007, the day after Corbett's hot dog sale protest, Duerring notified Corbett that he was to be suspended indefinitely and that Duerring took this action in response to Corbett's "expressive conduct." (Compl. ¶ 27).  Defendants contend that the complaint has not sufficiently alleged causation because (1) the exhibits attached to the motion to dismiss demonstrate the real reason for Corbett's termination was not related to his protected speech, (2) Corbett has not alleged that defendants were made aware of

his expressive conduct, and (3) Corbett's conclusory allegations
are insufficient to establish causation absent operative facts.
(Def.'s Mem. Supp. Mot. Dismiss 13, 16-18).

As an initial matter, the court again notes that
defendants' attempt to dispute the factual allegations in the
complaint by relying on the exhibits attached to their motion to
dismiss is unavailing.  Defendants cannot simultaneously urge the
court not to convert its motion to dismiss to a motion for
summary judgment while also relying on evidence outside the four
corners of the complaint in seeking dismissal, inasmuch as this
contravenes the Rule 12(b)(6) standard.  To be sure, the
appropriate vehicle for defendants' contentions based on the
outside evidence is a Rule 56 motion for summary judgment.

Turning to defendants' assertions regarding the
sufficiency of Corbett's allegations, the court finds that
Corbett has alleged adequate factual matter to satisfy his
initial burden of showing that "the protected speech was a
motivating factor or played a substantial role in inducing the
adverse action." Peters, 327 F.3d at 323.  Viewed in the proper
light, Corbett's allegation that defendants terminated his
employment in response to the hot dog sale protest implies that
defendants were "aware" of Corbett's protected speech.  This

24

inference is bolstered by the close temporal proximity between Corbett's protected speech and the retaliatory employment action (Corbett alleges Duerring indefinitely suspended him the day after his hot dog sale protest).  Although it may become apparent after discovery that the "but for" cause of Corbett's termination was unrelated to his protected speech, the court cannot say that the complaint lacks a sufficient factual basis to satisfy plaintiff's initial burden with respect to causation.


### IV.   Conclusion


Inasmuch as the complaint has satisfied all three prongs of the McVey test, Corbett has sufficiently alleged a First Amendment retaliation claim.  The court accordingly ORDERS that defendants' motion to dismiss be, and it hereby is, denied.

The Clerk is directed to forward copies of this order to all counsel of record.


DATED: January 28, 2011


John T. Copenhaver, Jr.
United States District Judge


25